# In the United States Court of Federal Claims
No. 16-1717C
(Filed: July 24, 2017)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * * * * | | |
| **ENTERGY LOUISIANA, L.L.C.,** | * * * * * | **Spent Nuclear Fuel; Partial Breach of Contract; Motion to Dismiss; Nuclear Regulatory Commission Fees; Collateral Estoppel; Breach of the Implied Duty of Good Faith and Fair Dealing; Fifth Amendment Taking; Pleading Alternative Theories.** |
| Plaintiff, | * | |
| v. | * | |
| **THE UNITED STATES,** | * | |
| Defendant. | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * * * * | | |

Samuel O. Morris, IV, Entergy Services, Inc., 1340 Echelon Parkway, M-ECHJ-520, Jackson, MS 39213, for Plaintiff. L. Jager Smith, Jr., Jager Smith, LLC, 1340 Echelon Parkway, Jackson, MS 39213, Of Counsel. Eric P. Langley and Robin F. Bromberg, Langley & Bromberg LLC, 2700 U.S. Highway 280, Suite 240E, Birmingham, AL 35223, Of Counsel.

Chad A. Readler, Robert E. Kirschman, Jr., Allison Kidd-Miller, and Adam E. Lyons, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, P.O. Box 480, Ben Franklin Station, Washington, D.C. 20044, for Defendant. Lisa L. Donahue, Kelly A. Krystyniak, and Anand R. Sambhwani, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, P.O. Box 480, Ben Franklin Station, Washington, D.C. 20044, Of Counsel. Jane K. Taylor, U.S. Department of Energy, Office of General Counsel, 1000 Independence Avenue, SW, Washington, DC 20585, Of Counsel.

---

**MEMORANDUM OPINION AND ORDER**

---

**WILLIAMS**, Judge.

In its second spent nuclear fuel ("SNF") litigation, Plaintiff, Entergy Louisiana, L.L.C.,[1] claims damages incurred from January 1, 2011, through December 29, 2016. This matter comes before the Court on Defendant's motion for partial dismissal. Defendant contends that Plaintiff's

---

[1]     Entergy Louisiana, L.L.C. is the successor to Entergy Gulf States Louisiana, L.L.C., one of the plaintiffs in the first round of this litigation. Compl. ¶ 5. On October 1, 2015, Entergy Gulf States Louisiana, L.L.C. transferred all of its assets to Entergy Louisiana, L.L.C., including River Bend Nuclear Generating Station and "all its rights and obligations under the Standard Contract . . . ." Id.; Entergy Gulf States, Inc. v. United States, 125 Fed. Cl. 678, 685 (2016).

claim for fees imposed by the Nuclear Regulatory Commission ("NRC") pursuant to 10 C.F.R. Part 171 ("Part 171") is barred under the doctrine of collateral estoppel and that its claims for breach of the implied duty of good faith and fair dealing and a taking are not cognizable. For the reasons stated below, the Court denies Defendant's motion.

## Background

River Bend Nuclear Generating Station ("River Bend") is a boiling water reactor ("BWR") located in Saint Francisville, Louisiana. Entergy Gulf States, Inc. v. United States, 125 Fed. Cl. 678, 685 (2016). The Nuclear Regulatory Commission ("NRC") issued an operating license to River Bend in November of 1985. Id. In 2005, Plaintiff began using an Independent Spent Fuel Storage Installation ("ISFSI") after determining that it would run out of storage space in its spent fuel pool before the Department of Energy ("DOE") would begin collecting its spent fuel. Id. at 686. This Court awarded Plaintiff's predecessor a total of $48,101,388 in damages in the first round of litigation, which covered a claim period from January 1, 1999, through December 31, 2010. Id. at 683; see also Entergy Gulf States, Inc. v. United States, 132 Fed. Cl. 59, 64 (2017); Entergy Gulf States, Inc. v. United States, 128 Fed. Cl. 335, 336 (2016).

## Discussion

### Plaintiff's Claim for NRC Fees is Not Barred Under the Doctrine of Collateral Estoppel

Plaintiff claims that it is entitled to recover NRC Part 171 fees for the damages period applicable to this second round of litigation - - January 1, 2011, through December 29, 2016. Compl. ¶¶ 27-29.

The NRC "has long recovered a substantial portion of its operating budget through fees levied on those that it regulates." Entergy Gulf States, 125 Fed. Cl. at 712. The NRC imposes two categories of fees pertinent here - - fees to cover specific benefits it provides to licensees, which fall under 10 C.F.R. Part 170, and since 1986, annual fees under 10 C.F.R. Part 171 to recover other generic costs. Id. Site-specific fees are license and inspection fees charged directly to the applicant or licensee involved and include fees associated with the review of applications for new licenses, the review of renewal applications, the review of license amendment requests, and inspections of licensees. 10 C.F.R. § 170.12 (2014).

In 1999, the NRC established the Spent Fuel Storage/Reactor Decommissioning Fee ("SFS/RD fee"), which covered costs for both wet and dry storage as well as decommissioning. Entergy Gulf States, 125 Fed. Cl. at 712. Prior to 1999,

> the NRC charged an annual generic fee to all licensees operating nuclear reactors to cover the NRC's general expenses related to wet storage and nuclear plant decommissioning. Before 1999, the NRC also charged a separate annual generic fee to all licensees with dry storage facilities to cover the NRC's generic expenses related to dry storage. The 1999 rule change eliminated the separate generic fees for (1) dry storage, and (2) wet storage and decommissioning, and created a new annual Spent Fuel Storage/Reactor Decommissioning ("SFS/RD") fee, which covered the NRC's generic costs related to both dry storage and wet storage as well as decommissioning. Specifically, the annual SFS/RD fee covered "the costs of the NRC's generic and other research activities directly related to reactor

2

> decommissioning and spent fuel storage (both [wet and dry] storage options), and other safety, environmental, and safeguards activities directly related to reactor decommissioning and spent fuel storage."
>
> \* \* \*
>
> The 1999 rule change combined the previously separate categories for wet storage and dry storage, and covered the NRC's generic wet-storage costs with a single SFS/RD fee that applied to all licensees with either wet storage or dry storage on site.

Consol. Edison Co. of N.Y., Inc. v. Entergy Nuclear Indian Point 2, LLC, 676 F.3d 1331, 1338 (Fed. Cir. 2012) (alteration in original) (internal citation omitted). In the proposed rulemaking, the NRC observed that the existing policy raised the following concerns about the equitable allocation of generic fees:

> (a) [t]he fee structure could create a disincentive for licensees to pursue dry storage; (b) [t]he fairness of assessing multiple annual fees if a licensee holds multiple [dry storage] licenses for different designs; and (c) [n]ot all affected licensees are being assessed the costs of NRC's generic decommissioning activities.

Entergy Gulf States, 125 Fed. Cl. at 712-13.

Defendant argues that Plaintiff is not entitled to recover its claimed Part 171 fees because this claim is barred under the doctrine of collateral estoppel. Def.'s Mot. 5. In the first round of litigation, Plaintiff's predecessor argued, as Plaintiff does here, that DOE's breach was a "substantial causal factor" of the NRC's decision to change the fee rule in 1999, as many more utilities were required to implement dry fuel storage. Entergy Gulf States, 125 Fed. Cl. at 714. The first round plaintiffs proffered the testimony of Mr. Jesse Funches, a former Chief Financial Officer ("CFO") of the NRC, as an expert in NRC fee assessment. Id. at 713. Mr. Funches relied on a number of NRC documents to support Plaintiffs' claim that the 1999 rule change was a result of DOE's breach. Id. at 713-14. This documentary evidence was identical to that presented in Consolidated Edison, which the United States Court of Appeals for the Federal Circuit found insufficient to establish a direct causal link between DOE's breach and the NRC's rule change. 676 F.3d at 1338-40.

This Court denied Plaintiff's predecessor recovery of NRC Part 171 fees, stating:

> Consistent with Consolidated Edison, in order to recover NRC fees in the instant action, Plaintiffs must establish a direct link between DOE's breach and the 1999 rule change. However, the evidence proffered by Mr. Funches in the instant case was similar to that previously analyzed by the Federal Circuit in Consolidated Edison and found to be insufficient. The internal NRC documents in evidence in the instant action . . . emphasized the NRC's need to change the fee structure in order to address concerns about unequal fee treatment creating a disincentive to use dry fuel storage, but did not expressly attribute the need to change the fee structure to DOE's breach of the Standard Contract. Other NRC documents . . ., also contained similar reasoning about eliminating a potential disincentive to use dry storage.

3

Entergy Gulf States, 125 Fed. Cl. at 714-15 (internal citations omitted).

This Court found that these internal NRC documents "echo[ed] the NRC's public statements in the Federal Register, which the Federal Circuit in Consolidated Edison held were insufficient to prove causation," and that Mr. Funches' testimony "did not cure this evidentiary deficit." Id. at 715. The Court concluded:

> Mr. Funches' testimony, although informed by his experience as the NRC's CFO and his awareness of the impact DOE's well-known delay had on the regulatory climate, does not meet the stringent legal requirement for causation established in Consolidated Edison – that the NRC itself attribute DOE's breach as the reason for implementing the 1999 SFS/RD fee. Nor did Mr. Funches recall any NRC member making such an explicit statement.

Id. at 716-17 (internal footnote omitted).

The doctrine of collateral estoppel applies when four conditions are met:

> (1) an issue is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) the resolution of the issue was essential to a final judgment in the first action; and (4) the party defending against issue preclusion had a full and fair opportunity to litigate the issue in the first action.

Shell Petroleum, Inc. v. United States, 319 F.3d 1334, 1338 (Fed. Cir. 2003) (internal citations omitted). Collateral estoppel "serves to bar the revisiting of 'issues' that have already been fully litigated . . . ." Jet, Inc. v. Sewage Aeration Sys., 223 F.3d 1360, 1366 (Fed. Cir. 2000).

Here, Defendant argues that all four conditions have been met, as this Court denied Plaintiff's predecessor recovery of Part 171 fees in the first round of litigation. Plaintiff counters that Defendant has not established the requirement for "identical issues in the prior proceeding" because it will offer different evidence in support of its claim for NRC fees for the January 1, 2011 to December 29, 2016 period than that presented in the first round case. Such different evidence will raise a different issue than that previously litigated - - whether this new evidence will be sufficient to establish that the Government's breach caused the rule change. As such, it would be premature to conclude at this juncture that collateral estoppel bars this claim.

**Plaintiff's Claim for Breach of the Covenant of Good Faith and Fair Dealing May Be Maintained**

Plaintiff alleges that DOE has breached the covenant of good faith and fair dealing, citing the following acts and omissions:

> by failing and refusing to make any effort to meet the contractual deadline for beginning to dispose of [spent nuclear fuel]; by steadfastly attempting to avoid its obligations under the [Standard Contract]; by failing to make any effort to dispose of Entergy Louisiana's [spent nuclear fuel] or even to provide Entergy Louisiana with a firm date on which DOE will begin to do so; and by insisting on Entergy Louisiana's continued performance of its reciprocal obligation to pay fees into the Nuclear Waste Fund through May 15, 2014 despite DOE's refusal to perform.

4

Compl. ¶ 35.

In seeking to dismiss Plaintiff's claim for breach of the covenant of good faith and fair dealing, Defendant argues that this claim duplicates Plaintiff's express contract claim and that Plaintiff has not alleged any extra-contractual conduct that frustrates the purpose of the contract. Def.'s Mot. 12-13. Plaintiff counters that its claim for breach of the covenant of good faith and fair dealing is supplemental to its breach of contract claim and goes to Defendant's "lack of diligence in performing its obligations under the Standard Contract" and Defendant's "subterfuges and evasions regarding when it would actually perform." Pl.'s Resp. 14-15 (internal citation and quotation marks omitted).

The implied duty of good faith and fair dealing covers an independent duty not expressly stated in the contract that does not conflict with express contract provisions. The Federal Circuit in Metcalf Construction Co., Inc. v. United States recognized the need for such an implied duty, stating that "it is rarely possible to anticipate in contract language every possible action or omission by a party that undermines the bargain . . . ." 742 F.3d 984, 991 (Fed. Cir. 2014). The implied duty of good faith and fair dealing "prevents a party's acts or omissions that, though not proscribed by the contract expressly, are inconsistent with the contract's purpose and deprive the other party of the contemplated value." Id. (citing First Nationwide Bank v. United States, 431 F.3d 1342, 1350 (Fed. Cir. 2005)); see also Agility Pub. Warehousing Co. KSCP v. Mattis, 852 F.3d 1370, 1384-85 (Fed. Cir. 2017). Because Plaintiff's claim of breach of the covenant of good faith and fair dealing is separate and distinct from its claim of breach of contract and constitutes a separate cause of action, Plaintiff is entitled to plead both claims.

**Plaintiff's Claim for a Fifth Amendment Taking is Not Subject to Dismissal at This Juncture**

Defendant argues that Plaintiff's taking claim cannot survive because the proper cause of action recognized in spent nuclear fuel cases has been a partial breach of contract claim. Plaintiff counters that the Court should allow its taking claim "to remain until a judgment is entered on Plaintiff's breach of contract claim" because "it is possible that during the pendency of this litigation, a change in law or circumstances could render Plaintiff's takings claim the more appropriate vehicle for recovery of damages . . . ." Pl.'s Resp. 17-18.

Plaintiff is entitled to plead alternative theories of recovery. Taking claims pleaded in the alternative have previously been allowed in spent nuclear fuel cases. Plaintiff argues that by failing to pick up spent nuclear fuel in compliance with the terms of the Standard Contract, Defendant has taken Plaintiff's "vested real property rights," as Plaintiff is prevented from "being able to decommission its nuclear plant site and devote that site to commercial uses as soon as it otherwise would have been able to do so." Compl. ¶ 41. Courts have found this allegation sufficient to state a claim for a regulatory taking. See Omaha Pub. Power Dist. v. United States, 69 Fed. Cl. 237, 242-43 (2005) ("OPPD"); Sys. Fuels, Inc. v. United States, 65 Fed. Cl. 163, 172 (2005); Sacramento Mun. Util. Dist. v. United States, 61 Fed. Cl. 438, 442 (2004) ("SMUD"); see also Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336, 1342-43 (Fed. Cir. 2000).

It would be inappropriate to dismiss Plaintiff's taking claim at this stage of the litigation as the record is not yet fully developed. Sys. Fuels, 65 Fed. Cl. at 172 ("Given that the standard for determining whether a regulatory taking has occurred is both fact-intensive and case-specific, developing a more comprehensive record is appropriate."); SMUD, 61 Fed. Cl. at 442 (finding that

because a regulatory takings analysis is "ad hoc and fact intensive," dismissal of a takings claim at an early stage would be "premature") (internal quotation marks omitted); Detroit Edison Co. v. United States, 56 Fed. Cl. 299, 302-03 (2003) ("A more fully developed record will allow the court to assess whether the property right implicated in plaintiff's takings claim falls outside the rights granted under the Standard Contract.").

While Plaintiff is allowed to plead a taking claim in the alternative, this Court will not address such a claim unless Plaintiff's breach of contract claim fails. OPPD, 69 Fed. Cl. at 243 n.4 ("The court will address Plaintiff's takings claim only if the contract claims fail."); Sys. Fuels, 65 Fed. Cl. at 173 (stating that "a viable breach-of-contract claim trumps a valid takings claim," and that "maintaining both claims is a more appropriate course prior to the time judgment is rendered on the contract claims"); Detroit Edison, 56 Fed. Cl. at 303 ("[T]he court views plaintiff's takings theory as an alternative to its contract claim . . ., and not as a mechanism by which plaintiff may obtain remedies unavailable to it under the Standard Contract.") (internal citation omitted).

## Conclusion

Defendant's motion to dismiss Counts II and III of the Complaint is **DENIED**.

Defendant shall respond to Plaintiff's complaint by **August 23, 2017**.

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**